# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TIFFANY ROPER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 2:16-CV-01911-KOB |
| | ) |
| **CNU OF ALABAMA, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Plaintiff Tiffany Roper, proceeding pro se, sued Defendants Debt Management Partners, Adam March, and Daniel Valentine, among others, alleging that they violated the Fair Debt Practices Collection Act, the Telephone Consumer Protection Act, and Federal Communications Commission's telemarketing sales regulations. DMP, Mr. March, and Mr. Valentine moved the court to dismiss Ms. Roper's claims against them for lack of personal jurisdiction, lack of proper service, and failure to state a claim. (Doc. 13, 14). For the reasons discussed in this opinion, the court will grant the motion as to Mr. March and Mr. Valentine but deny it as to DMP.

## I. BACKGROUND

In October of 2013, Ms. Roper borrowed $500.00 from Advance America, an online lender. Ms. Roper obtained an extension on the original loan, resulting in a new balance of $587.50. Ms. Roper was unable to pay the balance, and the loan became delinquent.

CashNetUSA funded and held the loans offered by Advance America. CashNetUSA sold Ms. Roper's account to DMP, who in turn sold it to Solutions to Portfolios, LLC, who sold it to Legal Outsourcing. Ms. Roper alleges that DMP, Mr. March, and Mr. Valentine "have or have

had, direct or indirect control over the daily operations of such account." (Doc. 1 at ¶ 22).

Ms. Roper's complaint details several conversations with persons she alleges to be employees or agents of the Defendants (including the three Defendants who have moved to dismiss the complaint). (Doc. 1 at ¶¶ 22, 25-28, 32–44, 56–57, 60–64, 70, 88). During these conversations, Ms. Roper alleges the Defendants or their agents made false statements about the amount of her debt and the consequences of nonpayment, and also failed to identify themselves as debt collectors. Further, Ms. Roper claims she received over 150 unauthorized calls, and that the collectors failed to use accurate caller identification information. (Doc. 1 at ¶ 88, 65-66).

## II. STANDARD OF REVIEW

A Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. In determining whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[B]ecause Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible," the two inquiries are coextensive in this case. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant [but] 'need only make a prima facie showing.'" *S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)). The court must accept the allegations in the complaint as true. *Id.* "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"

*Mazer*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11 th Cir. 2002)). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require the complaint to provide "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(1). A plaintiff must provide the grounds of her entitlement, but Rule 8 rarely requires detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than a formulaic recitation of the elements of a cause of action do not meet Rule 8 standards. *Twombly*, 550 U.S. at 555, 557.

The court must construe a pro se complaint liberally, but it does not have a duty to rewrite it. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). Even a pro se plaintiff is "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

### III. DISCUSSION

#### A. Personal Jurisdiction

Personal jurisdiction "represents a restriction on judicial power . . . as a matter of individual liberty." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). When a defendant challenges personal jurisdiction by filing affidavits to support its position, "[t]he plaintiff bears the burden of proving by affidavit the basis upon which

jurisdiction may be obtained." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (internal citations omitted).

Ms. Roper need only make a prima facie showing of jurisdiction to defeat the motion. *See Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000). The court must "accept the allegations in the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiff." *Id*.

### 1. General Jurisdiction

For the court to exercise general jurisdiction over the Defendants, Ms. Roper must show that the Defendants' connection with Alabama, the forum state, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). Such contacts need not have a connection to the litigation, but they must be so extensive that the Defendants may be regarded as "essentially at home" in Alabama. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). No allegations in the complaint or evidence submitted to the court show that the Defendants' possessed contentious and systematic contacts with Alabama. DMP is registered to do business in Alabama, but that alone is insufficient for the court to exercise general jurisdiction over it. Therefore, the court cannot exercise general jurisdiction over the Defendants.

### 2. Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction is limited to "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal citations omitted). The plaintiff bears the burden to demonstrate a connection between the conduct forming the controversy and the forum, here Alabama. *Id*.

A three-factor test governs whether exercising jurisdiction would offend due process:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal citations and quotations omitted).

A nexus or connection between "the defendant, the forum, and the litigation is the essential foundation of *in personum* jurisdiction . . .." *Helicopteros*, 466 U.S. at 414. The factors are considered in turn. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Defendants argue that "[n]one of the calls or contacts with plaintiff specifically alleged in the Complaint occurred while DMP owned her account." (Doc. 13-1 at 6). However, Ms. Roper alleges that the DMP Defendants entered into an agreement with the entity that purchased the debt from them to collect on it, in effect enlisting the DMP Defendants as agents to collect the debt. *See* (Doc. 1 at ¶ 63-64). Ms. Roper's claims arise out of these alleged contacts of the defendants, through their agents, with Alabama.

However, Mr. March and Mr. Valentine have submitted affidavits stating that they had no meaningful contacts with Alabama. Mr. March has no contacts with the state, and Mr. Valentine has only been present in Alabama once for two hours while traveling. Because these facts are uncontested by Ms. Roper, the court accepts them. Therefore, the court finds Mr. March and Mr.

Valentine lack sufficient contacts with Alabama to satisfy due process. The one connection Mr. Valentine has with the state bears no relation to the litigation. Accordingly, the court will dismiss Mr. March and Mr. Valentine from this action without prejudice.

DMP is another story, however. It does not dispute it purchased Ms. Roper's account, creating a contact with Alabama. That contact forms the basis of Ms. Roper's complaint against DMP. Therefore, the court finds a close nexus between DMP's contact and this action.

Further, DMP purposefully availed itself of Alabama law in at least two ways. First, DMP purchased Ms. Roper's account, which was a contract between her, an Alabama resident, and CashNetUSA, an Alabama company. Second, DMP registered to do business in Alabama as a debt collector. Given these contacts, it does not offend traditional notions of fair play and substantial justice for the DMP to be hailed into an Alabama court.

### B. Statute of Limitations

Having found that the motion to dismiss the claims against Mr. March and Mr. Valentine should be granted, the court now considers whether any other ground in the motion justifies dismissing DMP.

DMP argues it has "have proven by affidavits and documentary evidence that they never made any efforts to collect on plaintiff's account at any time, and that, in any event, they sold all right, title, and interest in the account on March 25, 2014." (Doc. 13-1 at 7). Because a plaintiff must bring an FDCPA claim "within one year from the date on which the violation occurs," DMP argues that Ms. Roper's FDCPA claim against it is barred by the statute of limitation. 15 U.S.C. § 1692(k).

However, from the face of the complaint, the statute of limitations does not apply. Ms. Roper alleges that the offending conduct has continued to this day. *See* (Doc. 1 at ¶ 25).

6

Although DMP disputes its involvement in the conduct, the court may not consider the evidence submitted in deciding the merits of a motion to dismiss. *See Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."). The proper procedural mechanism for the defendant's argument is a motion for summary judgment. *See id.* Therefore, the court will deny the Defendants' motion to dismiss the complaint as time-barred.

      B.      **Failure to State a Claim**

The Defendants present three arguments that Ms. Roper's complaint fails to state a claim. First, the Defendants say that none of the allegations in the complaint about improper debt collection practices occurred during a time when DMP owned the debt. However, as previously discussed, Ms. Roper alleges that DMP entered into a business arrangement with the successor-in-interest on the debt to assist in its collection. At this point, the court must accept the allegation as true. Therefore, the court cannot dismiss the claim because of DMP's sale of the debt.

DMP's second argument, which claims Ms. Roper has failed to allege with any particularity that it contacted Ms. Roper, is similar. The complaint lays out in great detail a number of communications and contains a clear allegation that these contacts occurred between Ms. Roper and agents of the Defendants, including DMP. *See* (Doc. 1 at ¶¶ 22, 25-28, 32–44, 56–57, 60–64, 70, 88). Again, the court cannot decide the merit of that contention on a motion to dismiss.

DMP's final argument is that Ms. Roper's allegations under the headings "Liability & Respondeat Superior" and "Direct and Vicarious Liability Arguments" fail to state a claim. Ms. Roper is a pro se litigant, and the court must read her complaint generously. In the court's view, these sections are not independent claims for relief but merely elaborate Ms. Roper's other

claims. Further, the Defendants indiscriminately ask the court to dismiss Ms. Roper's entire complaint because of the alleged defects in those sections. *See* (Doc. 13 at 1) ("Defendants . . . move this Court . . . to dismiss Plaintiff's Complaint against them."). Because the Defendants have failed to show that Ms. Roper's complaint does not state a claim for relief, the court will deny the Defendants' motion.

### D. Proper Service

DMP argues that Ms. Roper failed to properly serve them. Ms. Roper served a summons and a copy of the complaint on the Defendants via certified mail, but they state they "never consented to such service" and, accordingly, service was improper under Fed. R. Civ. P. 4.

The gist of the Defendants' argument seems to be that certified mail is never proper under the Federal Rules of Civil Procedure. That position is wrong. Rule 4(e)(1) says service on an individual is proper if it is made "following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The federal rules extend this principle to service on a corporation. *See* Fed. R. Civ. P. 4(h)(1)(A).

Under the Alabama Rules of Civil Procedure, certified mail is a proper method of service. *See* Ala. R. Civ. P. 4(i)(2). It does not require a waiver or the defendant's consent. As that argument is the only one the Defendants raise against the propriety of service, the court will deny the motion to dismiss for lack of proper service.

### IV. CONCLUSION

In a separate order consistent with this opinion, the court will grant in part and deny in

part the Defendants' motion to dismiss. (Docs. 13, 14).[1] The court will dismiss Mr. March and Mr. Valentine without prejudice because the court lacks personal jurisdiction over them. The case will proceed against DMP.

**DONE** this 4th day of August, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Document 13 and Document 14 are exactly identical—they are both motions to dismiss by Debt Management Partners, Adam March, and Daniel Valentine. However, the style of the documents in CM-ECF is different. Document 13 is entitled "Motion to Dismiss Plaintiff's Complaint by Debt Management Partners LLC, Adam March," while Document 14 is entitled "Motion to Dismiss Plaintiff's Compliant by Daniel Valentine."